IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

KELLY PETTICREW
o/b/o Hailey R. Adkins,

        Plaintiff,

V.                                           CIVIL ACTION NO. 3:04-0420

JO ANNE BARNHART,
Commissioner of Social Security,

        Defendant.

**FINDINGS AND RECOMMENDATION**

In this action, filed under the provisions of 42 U.S.C. §1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her daughter's application for child's supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff protectively filed the application on August 8, 2002, alleging disability as a consequence of a vision impairment, "signs of attention deficit hyperactivity disorder, obsessive compulsive disorder and anxiety," poor hearing, and "signs of learning problems." On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review.

At the time of the administrative decision, Hailey was five years old and in kindergarten. The administrative law judge found, and the medical evidence establishes, that

Hailey suffers from "Attention Deficit Hyperactivity Disorder and anxiety," impairments which are severe. Concluding Hailey did not have a combination of medically determinable physical or mental impairments which meet or medically or functionally equal a listed impairment,[1] the administrative law judge found her not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Under the applicable regulations, the analysis of whether a child is disabled consists of three steps. First, it must be determined whether the child is working and, if not, whether a "severe" impairment is present. If so, the last step is to determine whether "the impairment(s) ... meets or medically equals in severity" or is functionally equal in severity to a listed impairment.[2]

The record does not contain evidence of any physical impairments which limit Hailey's ability to function. Though a heart murmur was detected in early 1999, and Hailey was subsequently evaluated by a pediatric cardiologist, there is no indication of any limitations attributable to it, and at more recent evaluations, it has not even been detected. Similarly, while Hailey's right eye vision has been shown to be poor with one measurement being 20/200, Dr. Scott Henry noted in March of 2003 that it was correctable to 20/30. Left eye vision, with and without correction, is also 20/30. Dr. Henry additionally noted that the right eye vision impairment was responding "very well" to treatment using a patch. In light of this evidence, the administrative law

---

[1] 20 C.F.R. §416.924.

[2] Id.

2

judge concluded that neither of these conditions imposed enough of a limitation to be considered "severe,"[3] and this finding is supported by the evidence.

Hailey's main problems are related to depression and anxiety which began following an incident when her parents were both arrested and she was put into foster care for approximately two days in May or June of 2001. According to plaintiff's report, upon her return to the home Hailey regressed in her abilities to use the bathroom independently, sleep by herself and be away from her mother. She also began having temper tantrums and displaying aggressive behavior toward herself and others. Hailey and her parents began therapy with Janet W. Adkins, M.A., on September 6, 2001, and continued to see her through at least September 12, 2003, the date of her most recent report. The initial diagnosis was separation anxiety disorder. Therapy focused on improving parenting skills and behavior modification for Hailey. In early 2002, Ms. Adkins noted "great improvement" in Hailey overall and observed that her behavior during the session on this date was calm. She still did not want to attend preschool, however. In June of 2002, "great improvement" was again noted and, in an August 29, 2002 statement, Ms. Adkins wrote that there had been fifteen sessions since therapy began resulting in "significant progress over time." While her notes reflect a worsening of Hailey's behavior in September of 2002, Ms. Adkins indicated her parents were quarreling and there was turmoil in the home.

The Commissioner had Hailey evaluated by Lisa Tate, M.A., on September 17, 2002. Plaintiff related that Hailey was totally dependent on her for personal care except for eating and drinking. She related that Hailey did watch cartoons on TV and played outside and that she

---

[3] The regulations governing children's disability provide that an impairment, to be considered severe, must be more than a "slight abnormality" that causes "no more than minimal" functional limitations. 20 C.F.R. §416.924(c).

sometimes acted shy around other children. During the evaluation, Hailey was reluctant to participate, moving around the room and showing some anxiety at times, especially about being left alone. I.Q. testing produced scores consistent with average intellectual functioning and Ms. Tate observed that Hailey recalled and understood directions, maintained a consistent level of effort and was persistent with adequate attention, concentration and pace. She did not observe any vision problems. The diagnosis was adjustment disorder with features of depression and anxiety.

In December of 2002 and January of 2003, plaintiff discussed with the psychologist her fears that Hailey had been sexually abused. Hailey was cooperative and well-behaved during her evaluations with this psychologist on January 9 and March 11, 2003. On the latter date, plaintiff expressed concern that Hailey was reading right to left and could not print her name, although this was not noted by any examiners. Karen Armstead, M.A., also a clinical psychologist, evaluated Hailey in April of 2003, specifically looking at the attention/concentration problems alleged by plaintiff. Hailey had apparently been prescribed the medication Lexapro in November of 2002, but this was discontinued in January of 2003. Ms. Armstead observed that Hailey discussed things openly, answered questions, attempted each task presented on testing and showed adequate effort and motivation. Test results were reported to show that she had adequate attention and concentration when compared to others her age and similarly showed no greater impulsivity in comparison with other children. This examiner related that Hailey's preschool teacher had completed a questionnaire indicating that she had difficulty with anxiety and depression, including being upset easily and seeming fearful and anxious about making mistakes. Ms. Armstead's diagnosis was post-traumatic stress disorder, and she felt mood disorder, NOS, should be ruled out.

It was her opinion that Hailey's difficulties with concentration, over activity and behavior were related to anxiety and/or depression rather than attention deficit/hyperactivity disorder.

Hailey began treatment at the Prestera Center on April 29, 2003, when she was observed to sit still through the evaluation, display an anxious mood and was "selectively mute" much of the time. She was alert, oriented and displayed age appropriate thought content and thought processes as well as an intact memory. The diagnosis here was anxiety disorder, NOS, learning disorder, NOS, and rule out attention deficit/hyperactivity disorder. Zoloft was prescribed at that time. Some improvement was noted at the follow-up on June 24, although Hailey was still displaying anxiety symptoms such as nail biting and clinging to her mother. When the Zoloft dose was increased, side effects forced discontinuation. Symptoms were improved on July 16, 2003, and Hailey was described as being responsive to direction and appropriate in affect. It was felt a medication-free trial period should be initiated.

While in treatment at Prestera, Hailey was also evaluated for possible seizures by Charlotte Jones, M.D., a neurologist. Observations included that Hailey was very active with limited attention; however, she spoke in complete sentences, had "grossly full" visual fields and did not display any neurological deficits. In making her diagnosis, this physician noted Hailey's "significant hyperactive issues," but concluded the spells she was experiencing were not typical for seizures. She felt an EEG was nonetheless necessary, but there is no formal report of the results. Plaintiff did subsequently relate her understanding that this test had been normal.

The most recent reports as to Hailey's functioning come from Ms. Adkins, whose September 3, 2003 note reflects Hailey still having some outbursts of bad or violent behavior, according to her mother, but that these had become less frequent, less severe and did not last as long.

Ms. Adkins further noted that Hailey's parents had made significant improvement in their parenting. While Hailey was not then on any medication, they wanted her to be seen by a psychiatrist. She did display some bad behavior at this visit. Nine days later, Ms. Adkins related that Hailey's parents were doing "quite well" and that Hailey was now attending school willingly. They all continued to believe that she should be evaluated by a doctor to determine whether medication was needed.

As noted, the administrative law judge did not find any severe physical impairments. In terms of mental impairments he determined that anxiety and attention deficit/hyperactivity disorder were "severe," although the latter condition is not noted to actually be diagnosed in the record. After considering these findings in light of the listings, he concluded that her impairments did not meet or equal any listed impairment, consistent with the assessments from state agency reviewers, and supported by substantial evidence.

To be functionally equal to the listings, an impairment(s) "must be of listing-level severity; i.e., must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain... ."[4] A "marked" limitation is one which "interferes seriously" with a child's ability to independently initiate, sustain or complete activities. It also "means more than moderate."[5] An "extreme" limitation occurs when an impairment(s) interferes "very seriously" with ability to initiate, sustain or complete activities. It is also defined as "more than marked."[6]

The administrative law judge found no limitation in the domain of moving about and manipulating objects, which he noted addresses fine and gross motor skills, an area in which there

---

[4] 20 C.F.R. §416.926a(a).

[5] 20 C.F.R. §416.926a(e)(2).

[6] 20 C.F.R. §416.926a(e)(3).

is no limitation established. The administrative law judge also found no limitation in the domain of caring for yourself, which involves consideration of how well a child can independently help herself and cooperate with care givers to meet physical and emotional needs.[7] There is no indication that Hailey was not progressing appropriately until she was traumatized by the arrest of her parents and placement into foster care. Though some regression was noted upon her return to the home, the administrative law judge observed that this had resolved with therapy. This conclusion is supported by substantial evidence.

In the domain of acquiring and using information, i.e., learning and thinking, the administrative law judge found a less than marked limitation based on Hailey's anxiety and diagnosis of attention deficit/hyperactivity disorder. As noted, there is some question whether she actually displayed the characteristics of this disorder and her mother's allegation that she reads and writes backwards has not been confirmed. I.Q. testing did reveal average range scores and, as the administrative law judge observed, Hailey's anxiety and behavior have improved with therapy. The administrative law judge's finding relative to functioning in this domain is also supported by the evidence.

The domain of attending and completing tasks was also found to be limited, but to a "less than marked" degree. The administrative law judge reasoned that this appeared to be due primarily to Hailey's anxiety which caused her to become upset easily and concerned about making mistakes. She did exhibit adequate attention and concentration during testing, interacted appropriately, followed directions and attempted all tasks, according to the examiners. The degree of limitation in this area found by the administrative law judge is thus supported by the evidence.

---

[7] See, 20 C.F.R. §416.926a(k).

The domain of interacting and relating to others involves how a child initiates and sustains emotional connections to others; uses the "language of the community;" cooperates with others; complies with rules; responds to criticism; and, respects and takes care of the possessions of others.[8] The administrative law judge noted Hailey's history of explosive outbursts which were being addressed in therapy and have lessened in severity, frequency and duration. While these have not been eliminated completely, and she does still have some problems interacting in unfamiliar settings, the administrative law judge found she would not have more than a "less than marked" limitation in this domain, a conclusion clearly supported by the evidence.

Finally, under the domain of health and physical well-being, involving evaluation of the cumulative effects of physical and mental impairments and associated treatment, the administrative law judge again found a less than marked limitation. Taking into account the factors outlined above relative to Hailey's improvement with treatment but also noting some residual limitations, he arrived at this finding, which is well-supported by the evidence.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to Hailey's impairments and their effect on her functioning. Under such circumstances, the decision of the Commissioner should be affirmed.

---

[8] 20 C.F.R. §416.926a(i).

## **RECOMMENDATION**

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: May 27, 2005

/s/ Maurice G. Taylor, Jr.
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE